**BARHORST, INC., et al., Appellants,**

v.

**HANSON PIPE AND PRODUCTS OHIO, INC., Appellee.**

[Cite as *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858.]

Court of Appeals of Ohio,
Third District, Shelby County.

No. 17–06–06.

Decided Dec. 26, 2006.

James L. Thieman and Thomas J. Potts, for appellants.

Daniel W. Costello and Anne M. Hughes, for appellee.

ROGERS, Judge.

{¶ 1} Plaintiffs-appellants, Barhorst, Inc. and DECC, Inc., appeal the judgment of the Shelby County Common Pleas Court, granting the "motion to compel arbitration and to stay this action pending arbitration" filed by the defendant-appellee, Hanson Pipe and Products Ohio, Inc. Based on the following, we reverse the decision of the trial court and remand the cause for further proceedings consistent with this opinion.

{¶ 2} Appellants were the only members of two Ohio limited liability companies, Robert Oldham, Ltd. and Robert Oldham Enterprises, Ltd. (hereinafter referred to as "the companies"). In April 2004, appellee submitted a letter of intent to purchase the companies from appellants. Due to a delay in closing, the parties agreed on a purchase price and created a formula for calculating the companies' net equity between June 30, 2005, and July 15, 2005, to allow the

purchase price to be adjusted to reflect an increase or decrease in net equity during that time. Both the purchase agreement and Schedule 2.5 provide a formula for calculating net equity. However, the method of calculation is stated differently in each. The parties apparently agree that in the purchase agreement, net equity is calculated by adding the amount of notes payable to the members' equity and subtracting cash on hand. However, Schedule 2.5 contains the following language:

> Net Equity is the residual amount of the Members' Equity in the Companies after the deduction of (a) balances due to lenders and (b) cash on hand. The parties have agreed that the Companies shall have a Net Equity value at Closing in the amount of _____, which is the amount calculated for Net Equity as of December 31, 2004, as shown below:
>
> | | |
> |---|---|
> | Members' Equity | $ |
> | Less: | |
> | Notes Payable | |
> | Capitalized Leases | |
> | Cash in Bank | _____ |
> | Net Equity | $ _____ |

Schedule 2.5 also provides an arbitration clause, which is the subject of this dispute. The arbitration clause provides:

> The calculation of Net Equity value at Closing shall be performed using the same information sources and methodology as used to calculate the amounts shown above. * * * Purchaser shall calculate the Net Equity as of the Closing Date from the Closing Balance Sheet and shall promptly provide to Sellers such calculation. In the event of a dispute as to the calculation of Net Equity from the Closing Balance Sheet, Sellers and Purchaser shall negotiate in good faith toward a resolution of any such dispute. In the event that the negotiation is not successful in resolving the dispute, then Purchaser and Sellers agree to submit the dispute to binding arbitration to be conducted in Columbus, Ohio using such rules and procedures on which Sellers and Purchaser may agree.

{¶ 3} On October 26, 2005, appellants filed a complaint to compel arbitration. Appellants amended their complaint on November 17, 2005, to seek relief in the form of declaratory judgment, arbitration, specific performance, and damages for breach of contract and unjust enrichment. As part of the amended complaint, appellants alleged that appellee had failed to calculate net equity as required under the purchase agreement and Schedule 2.5. Appellee timely filed an answer, denying that it had failed to calculate net equity.

{¶ 4} On December 14, 2005, appellee filed a motion to compel arbitration and stay the proceedings. On January 24, 2006, appellants filed a motion for summary judgment and a memorandum in opposition to appellee's motion. Additionally, the parties filed several responsive briefs and memorandums.

{¶ 5} On March 11, 2006, the trial court filed a judgment entry overruling appellants' motion for summary judgment as premature. On June 5, 2006, the trial court filed a judgment entry finding that "the parties dispute the proper calculation of post-closing net equity," ordering the parties to submit to arbitration, and ordering a stay of the proceedings pending arbitration.

{¶ 6} It is from this judgment that appellants appeal, presenting the following assignment of error for our review:

The trial court erred in granting the motion to compel of Appellee Hanson Pipe and Products Ohio, Inc. in its April 26, 2006 decision order-entry.

{¶ 7} In the assignment of error, appellants allege that appellee seeks arbitration as a way to reform the contract. Specifically, appellants contend that arbitration is required under the contract if the parties have a good-faith dispute as to the "calculation," but not for reformation of the formula used in making the calculation. Appellants also contend that Schedule 2.5 clearly evidences the distinction between "calculation" and "methodology" by using both terms. Therefore, appellants essentially argue that the only error that may be submitted to arbitration is an error caused by "plugging in" the numbers of the formula.

{¶ 8} Appellate jurisdiction is limited to review of lower courts' final judgments. Section 3(B)(2), Article IV of the Ohio Constitution. To be a final, appealable order, a judgment entry must meet the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64. While R.C. 2711.03(A) requires a trial court to hold a hearing prior to compelling arbitration, apparently, appellee's motion was brought under R.C. 2711.02(B). Therefore, the trial court did not err by not holding a hearing, and its judgment entry ordered a stay pursuant to R.C. 2711.02(B), which is a final, appealable order. R.C. 2711.02(C). Therefore, we have jurisdiction to determine this appeal. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, syllabus.

{¶ 9} Arbitration is encouraged as a method of settling disputes. See *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 700 N.E.2d 859. "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." Id. at 471, 700 N.E.2d 859. This case calls upon us to determine whether the parties' contract " 'creates a duty for the parties to arbitrate the particular grievance,' " which is a question for the trial court, and not the arbitrator. *LeROI Internatl., Inc. v. Gardner Denver Mach., Inc.*, 3d Dist. No. 17–03–20, 2004-Ohio-4163, 2004 WL 1770494, at ¶ 18, citing *Council of Smaller*

*Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 666, 687 N.E.2d 1352. However, while the general policy is to favor arbitration, that policy should be denied effect when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 173, 517 N.E.2d 559, quoting *Siam Feather & Forest Prods. Co., Inc. v. Midwest Feather Co., Inc.* (S.D.Ohio 1980), 503 F.Supp. 239, 241.

{¶ 10} When an appellate court reviews a trial court's decision to stay judicial proceedings pursuant to the parties' agreement to enter into arbitration, we accept the trial court's "findings of fact that are not 'clearly erroneous,'" but we review questions of law de novo. (Citation omitted.) *LeROI*, 2004-Ohio-4163, 2004 WL 1770494, at ¶ 6, citing *Lear v. Rusk Ind., Inc.*, 3d Dist. No. 5–02–26, 2002-Ohio-6599, 2002 WL 31716383, at ¶ 8. "In interpreting an arbitration clause, courts must apply the fundamental principles of Ohio contract law." Id. at ¶ 7, citing *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, at ¶ 31–34. Construction of a written contract is a matter of law, and the words used in the contract must "be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraphs one and two of the syllabus. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271.

{¶ 11} Here, the issue that must first be resolved is on declaratory judgment. In doing so, the trial court must decide whether the language of the purchase agreement and Schedule 2.5, specifying the method of determining "Net Equity," is enforceable as appellants demand, or should be reformed as appellees demand. Unless and until that issue is resolved, any decision by an arbiter is meaningless. Because the asserted dispute revolves around the language of the contract, rather than the calculation that must occur as a result of enforcing or reforming that language, "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gibbons–Grable*, 34 Ohio App.3d at 173, 517 N.E.2d 559, quoting *Siam Feather & Forest*, 503 F.Supp. at 241.

{¶ 12} Accordingly, the assignment of error is sustained.

{¶ 13} Having found error prejudicial to the appellants herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CUPP, J., concurs.

BRYANT, P.J., dissents.

BRYANT, Presiding Judge, dissenting.

{¶ 14} Respectfully, I must dissent from the majority's analysis and conclusion. This case does not call upon us to determine the declaratory judgment action; rather, we are called upon to determine whether the parties' dispute is subject to the arbitration clause set forth in their contract.

{¶ 15} As the majority noted, "[t]he question of arbitrability, which has been defined as 'whether an agreement creates a duty for the parties to arbitrate the particular grievance,' should be decided preliminarily by the trial court and not the arbitrator." *LeROI Internatl. v. Gardner Denver Mach., Inc.*, 3d Dist. No. 17–03–20, 2004-Ohio-4163, 2004 WL 1770494, at ¶ 18, quoting *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 666, 687 N.E.2d 1352. However, "issues of *contract interpretation are properly determined by the arbitrator* and not the trial court." (Emphasis added.). Id., citing *Southwest Ohio Reg. Transit Auth. v. Amalgamated Transit Union, Local 627* (2001), 91 Ohio St.3d 108, 110, 742 N.E.2d 630.

{¶ 16} The facts are undisputed that appellee calculated net equity. In support of their motion for summary judgment, appellants filed the affidavit of Nelson E. Barhorst, who stated that appellee had calculated net equity. Attached to the affidavit was a copy of an e-mail sent from appellee's agent, clearly showing the calculation.

{¶ 17} Appellants' arguments are based on their dissatisfaction with the end result of the calculation. I recognize that the conflict underlying the calculation stems from an issue of contract interpretation. However, the contract clearly and unambiguously requires arbitration for "*a dispute as to the calculation of* Net Equity from the Closing Balance Sheet." (Emphasis added.). Appellee performed the calculation to appellants' dissatisfaction. Regardless of why the calculation is unsatisfactory to appellants, the result of the calculation is the basis of the dispute, which is clearly and unambiguously appropriate for arbitration pursuant to the parties' agreement. Any discrepancy in the contract language establishing the formula or methodology for calculating net equity is an issue of contract interpretation, which, as noted above, is an issue subject to arbitration.

{¶ 18} Had appellee failed to calculate net equity, I might have been inclined to join the majority; however, because appellee *did* perform the calculation, remanding this cause for the trial court to decide the declaratory judgment action puts the cart before the horse. For the reasons stated, I would overrule appellants' assignment of error and affirm the judgment of the trial court.