[Cite as *Am. Servicing Corp. v. Wannemacher*, 2014-Ohio-3984.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

AMERICAN SERVICING CORP.,

    PLAINTIFF-APPELLANT,           CASE NO.  12-14-01

    v.

RONALD E. WANNEMACHER,         O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Putnam County Municipal Court

Trial Court No. 2013 CVG 00308

**Judgment Affirmed**

Date of Decision:   September 15, 2014

APPEARANCES:

    *Kurt A. Dauterman* for Appellant

    *Gregory J. Hermiller*  for Appellee

Case No. 12-14-01

**PRESTON, J.**

{¶1} Plaintiff-appellant, American Servicing Corporation ("American Servicing"), appeals the December 20, 2013 judgment of the Putnam County Municipal Court denying its requests for forcible entry and detainer and damages. For the reasons that follow, we affirm.

{¶2} On March 6, 2013, American Servicing entered into a contract with defendant-appellee, Ronald E. Wannemacher ("Wannemacher"), regarding property located at 145 Truax Road in Cloverdale, Ohio ("the property"). (Doc. No 1).[1] Under the terms of the contract, Wannemacher agreed to pay American Servicing $244.87 per month ("the rent") for 36 months. (*Id.* at 4, 6). American Servicing calculated Wannermacher's payments "at a $22,800.00 purchase price, amortized over 180 payments with an interest rate of 9.99%." (*Id.* at 4). The contract noted that an amortization schedule was attached.[2] (*See id.*). Wannemacher's payments were due on or before the first of each month to American Servicing in the care of Timothy M. Runion ("Runion"), American Servicing's owner, and were subject to a $50.00 late penalty if paid after the fifth day of the month. (*Id.*). Wannemacher was responsible for all repairs and maintenance of the interior and exterior of the property, required to maintain

---

[1] The record reflects that the property encompasses approximately 53 acres of land, including approximately 40-41 acres of farmland, 5-6 acres of wooded area, and 5 acres of land on which a house sits. (Nov. 18, 2013 Tr. at 89).

[2] The amortization schedule purportedly attached to the contract is not included in the record. (*See* Doc. No. 1).

-2-

insurance on the property, and required to pay the property taxes. (*Id.* at 5). If Wannemacher failed to pay the rent, taxes, or insurance for more than 30 days, American Servicing had the right "to reenter and repossess the premises" and terminate "the lease." (*Id.*).

{¶3} The contract offered Wannemacher the option to purchase the property for $22,800.00 during its term and included a prepayment penalty provision.[3] (*Id.* at 5). Otherwise, the contract stated that "at the end of the 36 month term of this Lease, [Wannemacher] is *required* to make a balloon payment of Twenty Thousand Four Hundred Ninety Nine Dollars and eighty one cents ($20,499.81)." (Emphasis added.) (*Id.*). If Wannemacher paid all of the rent payments and the balloon payment, American Servicing agreed to convey the property to Wannemacher by general warranty deed. (*Id.*). If Wannemacher was unable to pay the balloon payment, American Servicing had the right "to reenter and repossess the premises" and terminate "the lease." (*Id.*).

{¶4} Wannemacher timely remitted his payments for April, May, June, and July 2013. (Doc. No. 8). (*See also* Nov. 18, 2013 Tr. at 49). Wannemacher timely remitted his payment for August 2013 ("August payment"); however, American Servicing returned the August payment to Wannemacher on August 13,

---

[3] The prepayment penalty provision required Wannemacher to pay six payments in addition to the payoff amount. (Doc. No. 1).

2013 because he had insufficient funds in his account on which the check was drawn. (Nov. 18, 2013 Tr. at 7); (Doc. No. 7).

**{¶5}** Wannemacher testified that he remitted his next payment ("September payment") on September 2, 2013.[4] (Nov. 18, 2013 Tr. at 24). Because Wannemacher's August payment was more than 30 days late by that time, American Servicing determined that Wannemacher was in breach of the contract. (*Id.* at 55). As a result, American Servicing rejected Wannemacher's September payment, and Runion personally posted a "Termination of Lease & Notice to Leave the Premises" notice ("the notice") on the front door of the property on September 5, 2013. (*Id.* at 53, 55). The notice stated that Wannemacher's "lease" of the property was terminated as of September 11, 2013 because Wannemacher failed to remit the August payment in the time specified by the contract. (Doc. No. 1). The notice further indicated that Wannemacher was to vacate the premises by September 11, 2013 or American Servicing would pursue an eviction action against him. (*Id.* at 13).

**{¶6}** On September 23, 2013, American Servicing filed a complaint for forcible entry and detainer and damages. (*Id.* at 1). The trial court held a

---

[4] The record reflects that the check was dated August 30, 2013, and postmarked September 3, 2013. (*See* Doc. No. 7).

"hearing"[5] on American Servicing's complaint on November 18, 2013. (Nov. 18, 2013 Tr. at 1).

**{¶7}** At the hearing, Wannemacher testified that he confirmed with his bank on August 15, 2013 that the August payment was returned for insufficient funds, after receiving a notice in the mail on August 14, 2013. (*Id.* at 18-19). After confirming the returned check, Wannemacher testified that he called Runion to inform him of the returned check and to inquire how to cure the deficiency. (*Id.*). Specifically, Wannemacher testified that he offered to write Runion another check, present him with a cashier's check, personally deliver cash to him, or represent the returned check. (*Id.*). According to Wannemacher, Runion told him that he would represent the returned check to his bank. (*Id.*). Wannemacher testified that because he did not hear anything more from Runion, he assumed the matter was cured, and he proceeded by remitting the September payment. (*Id.*).

**{¶8}** Runion testified that he did not recall receiving a phone call or voicemail message from Wannemacher on August 15, 2013 because it was a stressful time for him due to a close friend's illness and subsequent death. (*Id.* at 55). However, phone records included in the record reflect that a phone call between Wannemacher and Runion occurred on August 15, 2013 and lasted for approximately three minutes. (*Id.* at 59). (*See also* Doc. No. 8). More

---

[5] We note that the parties refer to the November 18, 2013 inquiry as a "hearing," but it appears that it was a trial on the merits of American Servicing's complaint.

specifically, Runion testified that he did not recall telling Wannemacher that he would represent the check. (Nov. 18, 2013 Tr. at 59). Rather, Runion testified that he would have told him that he needed to remit the August payment and that he would have accepted any form of payment. (*Id.* at 54). Runion testified that he did not send any written correspondence to Wannemacher indicating that his August payment was late or that he owed American Servicing a $50.00 late fee and a fee for the returned check because he assumed Wannemacher's bank would inform Wannemacher that his August payment was returned for insufficient funds. (*Id.* at 65).

{¶9} At the hearing, Runion also testified regarding Wannemacher's interest in the property. Without any further explanation, he stated, "The lease was filed so [Wannemacher] would have one position." (*Id.* at 63).[6] Runion also testified that if Wannemacher made all of his payments and the balloon payment, he would own the property. (*Id.* at 64).

{¶10} Wannemacher offered testimony regarding his impression as to his interest in the property. Wannemacher testified that he signed the contract on the advice of legal counsel, and indicated that he understood the contract to mean that the property would be leased back to him, he would make payments for three years to bolster his credit so that he could qualify for a loan to make the balloon

---

[6] The record reflects that the instrument was recorded on March 7, 2013 with the Putnam County Recorder's Office. (*See* Doc. No. 1). The recorder's stamp at the top of the first page of the document reads, "Lease." (*See id.*).

payment, and after making the payments and the balloon payment, the property would be his. (*Id.* at 86-87). Wannemacher further testified that he understood the contract to be a loan and that he agreed to pay a 9.99 percent interest rate. (*Id.* at 88).

{¶11} On December 20, 2013, the trial court concluded in a judgment entry that the contract between the parties constituted a land installment contract, not a lease with an option to purchase and that R.C. 5313.08 governed American Servicing's complaint. (Dec. 20, 2013 JE, Doc. No. 9). The trial court concluded that American Servicing did not comply with the notice provisions of R.C. 5313.06, as required by R.C. 5313.08, and dismissed its complaint. (*Id.*).

{¶12} American Servicing filed its notice of appeal on January 17, 2014. (Doc. No. 10). American Servicing raises two assignments of error for our review. For ease of our discussion, we will address American Servicing's assignments of error together.

### Assignment of Error No. I

**The parties stipulated to the admission of the written agreement and such was referred to as a "Lease" and when stipulated on the record by both parties, there is no ambiguity.**

### Assignment of Error No. II

**The lease with the option to purchase is not a land sale contract since the option to purchase the property was not mandatory, but an option of Appellee, thus the court had jurisdiction to**

**decide the matter for non-payment of rent pursuant to the lease agreement and award Appellant possession of the premises.**

**{¶13}** In its first assignment of error, American Servicing argues that the parties stipulated at the November 18, 2013 hearing that the contract was a lease with an option to purchase, not a land installment contract. In its second assignment of error, American Servicing argues that the trial court erred in concluding the contract was a land installment contract and dismissing its complaint. Specifically, American Servicing argues in both of its assignments of error that the trial court's conclusion that the contract was a land installment contract was contrary to the parties' stipulation and contrary to law.

**{¶14}** "With regard to reviewing the language of any contract, '[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties.'" *Reinhart v. Fostoria Plumbing, Heating & Elec. Supply, Inc.*, 3d Dist. Seneca No. 13-10-08, 2010-Ohio-4825, ¶ 16, quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). "Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the contract." *Judson v. Lyendecker*, 10th Dist. Franklin No. 12AP-615, 2013-Ohio-1060, ¶ 12, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "'If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'"

*Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). In that case, we apply a de novo standard of review. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶15} "However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact." *Fadelsak v. Hagley*, 4th Dist. Lawrence No. 02CA41, 2003-Ohio-3413, ¶ 9, citing *Crane Hollow, Inc. v. Marathon Ashland Pipeline, LLC*, 138 Ohio App.3d 57, 74 (4th Dist.2000). "We will not reverse a factual finding of the trial court so long as some competent, credible evidence supports it." *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1974), syllabus.

{¶16} "To determine whether an agreement is a land installment contract or a lease with an option to purchase, a court must analyze the intent of the parties at the time they executed the agreement." *Judson* at ¶ 12, citing *Fadelsak* at ¶ 10, *Hubbard v. Dillingham*, 12th Dist. Butler No. CA2002-02-045, 2003-Ohio-1443, ¶ 11 and *Riverside Builders, Inc. v. Bowers*, 10th Dist. Franklin No. 89AP-834, 1990 WL 75433, *4 (June 7, 1990). If the court is unable to ascertain the parties' intent from the four corners of the document, "the court may also consider the

factual circumstances surrounding the parties' agreement." *Fadelsak* at ¶ 10. *See also Judson* at ¶ 12 ("[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent."), citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 12.

{¶17} The Revised Code defines a land installment contract as:

an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation. Option contracts for the purchase of real property are not land installment contracts.

R.C. 5313.01(A).

{¶18} By contrast, "Ohio courts have defined a 'lease' as 'a conveyance of an estate in real property for a limited term, with conditions attached, in consideration of rent.'" *Fadelsak* at ¶ 11, quoting *Cuyahoga Metro. Hous. Auth. v. Watkins*, 23 Ohio App.3d 20, 23 (8th Dist.1984) and *Jones v. Keck*, 79 Ohio App. 549, 552 (5th Dist.1946). And Ohio courts have defined "[a]n option contract for the purchase of real property [as] an agreement wherein the legal titleholder of the

property grants another person the privilege, *without the obligation*, to purchase the real property at a set price within a set time." (Emphasis added.) *Judson* at ¶ 10, citing *Wolf v. Miller Diversified Consulting, LLC*, 6th Dist. Wood No. WD-07-049, 2008-Ohio-1233, ¶ 22 and *George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54, 63 (1908) ("[D]efining option contracts as 'instrument[s] * * * by which one party in consideration of the payment of a certain sum to the other party, acquires the privilege of buying from or otherwise acquiring or selling to such other party an interest in the specified property at a fixed price within a stated time.'").

{¶19} "'The distinction, then, between a land [installment] contract and a lease with an option to purchase is that the land [installment] contract conveys a present ownership interest in realty, while the lease conveys an interest less than ownership.'" *Id.* at ¶ 11, quoting *Riverside Builders*, 1990 WL 75433, at *4 ("[A]n option to purchase property when coupled with a lease conveys a present interest in the realty which may be redeemed upon execution of the option.").

{¶20} American Servicing argues that the contract was clearly and unambiguously a lease with an option to purchase. Specifically, American Servicing argues that the parties' intent for the contract to be a lease with an option to purchase was established by the parties' stipulation as such, and the trial court's characterization of the contract as a lease. American Servicing's assertion

is erroneous. A "stipulation" is "a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point to avoid the necessity for proof on an issue." *Crow v. Nationwide Mut. Ins. Co.*, 159 Ohio App.3d 417, 2004-Ohio-7117, ¶ 18 (5th Dist.), citing *Rice v. Rice*, 8th Dist. Cuyahoga No. 78682, 2001 WL 1400012, \*4 (Nov. 8, 2001).

**{¶21}** Here, the parties stipulated that the contract contained the terms it contained to avoid prolonged testimony regarding the contents of the contract. In other words, the parties did not stipulate that the contract was a lease with an option to purchase as opposed to a land installment contract. *See Village of Oakwood v. Makar*, 11 Ohio App.3d 46, 50 (8th Dist.1983) (stipulation merely indicated that the bills were the ones actually sent, not as to the amount of reasonable attorney fees). The transcript of the hearing reveals the following exchange in response to American Servicing's counsel's direct examination of Wannemacher regarding the contents of the contract:

| [Trial Court]: | Can we just stipulate to the lease? Is there any objection to the lease agreement [Wannemacher's counsel]? |
|---|---|
| [Wannemacher's Counsel]: | No. |

[Trial Court]: [American Servicing's counsel], is there any reason not just to stipulate to the terms of the lease agreement?

[American Servicing's Counsel]: That's fine.

[Trial Court]: Okay. If you want to make a point about something in there, that's fine, but otherwise, can you just stipulate to the admission of the lease and then all of his contact[?]

[American Servicing's Counsel]: Sure, and I will move to a more pointed more direct question, Your Honor.

[Trial Court]: Very well. The lease will be admitted into the record upon stipulation of the parties.

(Nov. 18, 2013 Tr. at 22-23).

{¶22} Also, American Servicing argues that the trial court sustained its objection to Wannemacher's characterization of the contract as a "loan," and

stated "it is a lease with terms," which demonstrates that the contract was considered a lease with an option to purchase. (*See id.* at 87). The transcript of the hearing reveals the following exchange:

| | |
|---|---|
| [Wannemacher's Counsel]: | What was your understanding of the agreement as to what it was? |
| [Wannemacher]: | Well, it was supposed to lease the property back to me, and then after three years then I would have to make this payment of $22,800 [sic] more than I actually got after all that, but that would help build up my credit so I could get the money for the loan. |
| [Wannemacher's Counsel]: | So this money was loaned to you? |
| [American Servicing's Counsel]: | Objection. Your Honor, we have a lease agreement here. The agreement's already been admitted into the record. I mean the agreement speaks for itself. |

| | |
|---|---|
| [Trial Court]: | I will sustain the objection to the effect, [Wannemacher's counsel], that the characterization of a loan I don't believe is accurate given the fact it is a lease with terms. |
| [Wannemacher's Counsel]: | Okay. I will ask another question. Why is there an interest rate on this lease agreement, to your understanding? |
| [Wannemacher]: | Well, I never really thought about it. I guess it seems like a loan to me, whether they call it a lease or a loan. |

(*Id.* at 87-88).

**{¶23}** Taken in the context of Wannemacher's counsel's line of questioning, it is apparent from the record that Wannemacher's counsel was attempting to elicit testimony from Wannemacher regarding his understanding of the intent of the parties at the time the contract was executed. The fact that the trial court sustained American Servicing's counsel's objection to Wannemacher's

counsel's characterization of the contract as a "loan" as opposed to a "lease agreement" is not dispositive of the contract's legal nature in this case.

{¶24} Consequently, we reject American Servicing's argument that the parties stipulated that the contract was a lease with an option to purchase and the trial court characterized it as such. We also reject American Servicing's argument that the contract was clearly and unambiguously a lease with an option to purchase. Rather, we apply a de novo standard of review and conclude that the four corners of the contract clearly and unambiguously indicate that the parties intended a land installment contract as defined under R.C. 5313.01(A).

{¶25} First, we note that some courts apply a six-factor test supplied by the Fourth District to ascertain the intent of the parties. *See Fadelsak*, 2003-Ohio-3413, at ¶ 10, citing *In re D.W.E. Screws Products, Inc.*, 157 B.R. 326, 330 (Bankr.S.D.Ohio 1993) and *Hubbard*, 2003-Ohio-1443, at ¶ 11. However, the statute unambiguously defines a land installment contract. *See* R.C. 5313.01(A). "The first rule of statutory construction is that a statute which is clear is to be applied, not construed." *Vought Industries, Inc. v. Tracy*, 72 Ohio St.3d 261, 265 (1995). "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." *Id.*, citing *State ex rel. Foster v. Evatt*, 144 Ohio St. 65 (1944), paragraph eight of the syllabus. Therefore, if a statute's language is

plain and unambiguous, this court will apply it as written. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 13. Because R.C. 5313.01(A) is unambiguous, we need not look outside the definition of a land installment contract under the statute.

**{¶26}** From the plain language of the contract, we discern that the parties intended a land installment contract because the contract comports with the definition of a land installment contract, as it is defined by the statute. *See* R.C. 5313.01(A). Notwithstanding the contract's title, the language employed in the body of the contract demonstrates that the parties intended a land installment contract.

**{¶27}** The contract is titled "Lease Agreement with Option to Purchase;" however, its caption is not dispositive of its meaning. *See Fadelsak* at ¶ 12 (finding that the parties intended a land installment contract even though the agreement was captioned "Lease with Option to Purchase"); *Anderson v. Ballard*, 6th Dist. Lucas No. L-10-1007, 2010-Ohio-3926, ¶ 42 ("The fact that an agreement is titled "Option to Purchase," however, does not necessarily make it so.").

**{¶28}** Rather, the language employed in the body of the contract demonstrates that the parties intended a land installment contract. First, the contract was an executory agreement that was not required to be fully performed

by either of the parties within one year of the date of the agreement. *See* R.C. 5313.01(A). More precisely, the contract was to be fully performed three years from the date of the agreement. (*See* Doc. No. 1). Second, American Servicing agreed to convey the title to the property, and Wannemacher *agreed* to pay the purchase price in installment payments. *See* R.C. 5313.01(A). Third, American Servicing retained the title to the property as security for Wannemacher's obligation. *See id.*

{¶29} Irrespective of the above, American Servicing argues that the contract was an option contract, which by the statute's definition is not a land installment contract. *See id.* Specifically, American Servicing argues that the contract did not "bind" Wannemacher to purchase the property, but provided him the "opportunity" to purchase the property. (*See* Appellant's Brief at 16). The statute does not define "option contract;" however, courts have defined "option contract." *See Judson*, 2013-Ohio-1060, at ¶ 10. American Servicing's argument is erroneous because Wannemacher agreed to purchase the property. Stated another way, the contract *required* Wannemacher to remit the balloon payment at the end of the three-year contract term—he did not merely "acquire the privilege" to purchase the property. *Maxwell*, 78 Ohio St. at 63. (*See also* Doc. No. 1). As a result, the contract is not an option contract because it *required* Wannemacher to

purchase the property. *Compare Judson*, 2013-Ohio-1060, at ¶ 14 (contract did not obligate the vendee to purchase the property).

**{¶30}** Therefore, the four corners of the contract clearly and unambiguously indicate that the parties intended a land installment contract because the contract comports with the definition of a land installment contract under the statute. *See* R.C. 5313.01(A). As a result, we hold that the trial court did not err in concluding that the parties intended a land installment contract.

**{¶31}** As we stated above, because the statute is dispositive that the parties intended a land installment contract, it is unnecessary to address any other court-created measures for ascertaining the parties' intent. Nevertheless, even assuming the statute was ambiguous and in need of construction, application of the *Fadelsak* factors also demonstrates that the parties intended a land installment contract. Those factors are: "(1) the characterization of the document; (2) the lessee's rights at the end of the lease term; (3) the application of rent to the purchase price; (4) the responsibility for payments for repairs, utilities, and taxes; (5) the nonexistence of a financing statement; and (6) whether an option to purchase existed." *Fadelsak*, 2003-Ohio-3413, at ¶ 12.

**{¶32}** Here, the first *Fadelsak* factor—the contract's characterization—is the only factor that indicates the parties intended a lease with an option to purchase. As we noted above, while the contract is captioned, "Lease Agreement

with Option to Purchase," its characterization is not dispositive of its meaning. Instead, application of the second, third, fourth, and sixth *Fadelsak* factors indicate that the parties intended a land installment contract. Before addressing the four factors that indicate the parties intended a land installment contract, we note that because the existence of a financing statement cannot be ascertained from the four corners of the document, the fifth *Fadelsak* factor is inapplicable in this case to determine intent.[7]

**{¶33}** The second and sixth *Fadelsak* factors indicate that the parties intended a land installment contract because the contract obligated Wannemacher to make payments for 36 months and *required* him to remit the balance of the purchase price as a balloon payment at the end of the contract term to gain ownership of the property. *See Fadelsak* at ¶ 12 ("The agreement obligates the Fadelsaks to make rent payments for two hundred forty months, and implies that the Fadelsaks would gain ownership of the property upon the end of the lease term."). Therefore, because under the contract Wannemacher would be vested with ownership after making the 36 installment payments and the balloon payment at the end of the contract term, the factor regarding Wannemacher's rights at the end of the contract term demonstrates that the parties intended a land installment

---

[7] The record does not reflect any extrinsic evidence indicating whether the parties filed, or did not file, a financing statement. However, as we previously noted, the record reflects that the contract was recorded as a "lease" with the Putnam County Recorder's Office on March 7, 2013. (*See* Doc. No. 1). Much like the caption of a document is not dispositive of its meaning, the characterization of a document by a county recorder's office through its stamp at the top of a document is also not dispositive of its legal nature. *Compare Fadelsak*, 2013-Ohio-3413, at ¶ 12; *Anderson*, 2010-Ohio-3926, at ¶ 42.

contract. *See id.* By the same token, that Wannemacher was required to purchase the property—not given the privilege, without the obligation, to purchase the property at a set price and at a set time—also demonstrates that the parties intended a land installment contract.

{¶34} The third *Fadelsak* factor also indicates that the parties intended a land installment contract because the contract applied Wannemacher's rent to the purchase price based on the amortization schedule purportedly attached to the contract. *Compare Fadelsak* at ¶ 12 (contract was considered land installment contract because, in part, it applied all rent paid to the purchase price). *See also Black's Law Dictionary* 103 (10th Ed.2014) (defining amortization schedule as "[a] schedule of periodic payments of interest and principle owed on a debt obligation; specif. [sic], a loan schedule showing both the amount of principal and interest that is due at regular intervals over the loan term and the remaining unpaid principal balance after each scheduled payment is made").

{¶35} Finally, the fourth *Fadelsak* factor indicates the parties intended a land installment contract because the contract treated Wannemacher as the property owner since it required him to be responsible for all interior and exterior maintenance and repairs of the property, taxes, and insurance. *See Fadelsak* at ¶ 12 (contract considered land installment contract because it, in part, treated the

Fadelsaks as property owners by requiring them to be responsible for all maintenance, repairs, taxes, and insurance).

**{¶36}** Moreover, assuming the intent of the parties was not clear from the contract and looking beyond the statutory definition of land installment contract under R.C. 5313.01(A) and the *Fadelsak* factors, the facts and circumstances surrounding the contract also indicate that the parties intended to execute a land installment contract. *See Fadelsak* at ¶ 10 (the court may consider the facts and circumstances surrounding the contract if it is necessary to ascertain the parties' intent). The record reflects that Wannemacher had a significant interest in having an ownership interest in the property. While it is unclear from the record how American Servicing came to own the property, the record documents that Wannemacher owned the property prior to American Servicing's ownership. (*See* Nov. 18, 2013 Tr. at 89).[8] Wannemacher testified that his father was born in the home that is located on the property. (*Id.*). According to Wannemacher, he entered into the contract with American Servicing to retain the property while repairing his credit. (*Id.* at 87). As such, the facts and circumstances surrounding the contract demonstrate that the parties intended a land installment contract.

**{¶37}** Next, we hold that the trial court did not err in dismissing American Servicing's complaint after determining that the contract was a land installment

---

[8] The record reflects that Wannemacher has lived in the home located on the property since 2004. (Nov. 18, 2013 Tr. at 89).

contract and concluding American Servicing did not comply with the notice provisions of R.C. 5313.06 as required by R.C. 5313.08. *See Krivins v. Smyers*, 9th Dist. Summit No. 9935, 1981 WL 3945, *2 (Apr. 22, 1981) (the forcible entry and detainer complaint was dismissed because the notice of default did not comply with R.C. 5313.06). Because the trial court concluded that the contract was a land installment contract, R.C. Chapter 5313 applied to determine whether Wannemacher forfeited the land installment contract and whether American Servicing was entitled to restitution of the property.

{¶38} "R.C. 5313.08 applies when a vendee defaults on a land installment contract that has been 'in effect for less than five years' * * * [and] permits a vendor to bring an action for forfeiture of the vendee's rights in the contract and for restitution of the property." *Voska v. Coffman*, 6th Dist. Sandusky No. S-13-008, 2013-Ohio-5474, ¶ 10, quoting R.C. 5313.08. R.C. 5313.08 specifically states:

> If the contract has been in effect for less than five years, in addition
> to any other remedies provided by law and after the expiration of the
> periods prescribed by sections 5313.05 and 5313.06 of the Revised
> Code, if the vendee is still in default of any payment the vendor may
> bring an action for forfeiture of the vendee's rights in the land
> installment contract and for restitution of his property under Chapter

-23-

1923 of the Revised Code. When bringing the action under Chapter 1923 of the Revised Code, the vendor complies with the notice requirement of division (A) of section 1923.04 of the Revised Code by serving notice pursuant to section 5313.06 of the Revised Code. The court may also grant any other claim arising out of the contract.

R.C. 5313.08.

{¶39} Therefore, to maintain a forfeiture action under R.C. 5313.08, the vendee must "be in default, and remain in default, after the passage of the times provided in R.C. 5313.05 and 5313.06, and the notice given under the provisions of R.C. 5313.06." *Shriver v. Grabenstetter*, 3d Dist. Seneca No. 13-87-13, 1988 WL 53868 *5 (May 18, 1988). *See also Chemical Bank v. Sullivan*, 121 Ohio App.3d 111, 113 (6th Dist.1997).

{¶40} R.C. 5313.05 states:

When the vendee of a land installment contract defaults in payment, forfeiture of the interest of the vendee under the contract may be enforced only after the expiration of thirty days from the date of the default. A vendee in default may, prior to the expiration of the thirty-day period, avoid the forfeiture of his interest under the contract by making all payments currently due under the contract and by paying any fees or charges for which he is liable under the

contract. If such payments are made within the thirty-day period, forfeiture of the interest of the vendee shall not be enforced.

R.C. 5313.05. And R.C. 5313.06 states:

Following expiration of the period of time provided in section 5313.05 of the Revised Code, forfeiture of the interest of a vendee in default under a land installment contract shall be initiated by the vendor or by his successor in interest, by serving or causing to be served on the vendee or his successor in interest, if known to the vendor or his successor in interest, a written notice which:

(A) Reasonably identifies the contract and describes the property covered by it;

(B) Specifies the terms and conditions of the contract which have not been complied with;

(C) Notifies the vendee that the contract will stand forfeited unless the vendee performs the terms and conditions of the contract within ten days of the completed service of notice and notifies the vendee to leave the premises.

Such notice shall be served by the vendor or his successor in interest by handing a written copy of the notice to the vendee or his successor in interest in person, or by leaving it at his usual place of

abode or at the property which is the subject of the contract or by registered or certified mail by mailing to the last known address of the vendee or his successor in interest.

R.C. 5313.06.

{¶41} "Moreover, [R.C. 5313.08] states that the procedure to be followed is dictated by R.C. Chapter 1923 (the forcible entry and detainer statute) and that the notice provision of R.C. 1923.04(A) is satisfied by the notice mandated in R.C. 5313.06." *Chemical Bank* at 113. R.C. 1923.04 states, in relevant part:

(A) Except as provided in division (B) or (C) of this section, a party desiring to commence an action under this chapter shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at the defendant's usual place of abode or at the premises from which the defendant is sought to be evicted.

Every notice given under this section by a landlord to recover residential premises shall contain the following language printed or written in a conspicuous manner: "You are being asked to leave the premises. If you do not leave, an eviction action may be initiated

against you. If you are in doubt regarding your legal rights and obligations as a tenant, it is recommended that you seek legal assistance."

(B) The service of notice pursuant to section 5313.06 of the Revised Code constitutes compliance with the notice requirement of division (A) of this section.

\* \* \*

R.C. 1923.04.

{¶42} American Servicing's complaint for forcible entry and detainer and damages did not comply with R.C. 5313.08. The three-day notice that American Servicing supplied to Wannemacher failed to notify him that he would forfeit the land installment contract unless he satisfied the terms and conditions of the contract within ten days after service of the notice pursuant to R.C. 5313.06, a condition precedent to an action under R.C. 5313.08. *See Jones v. Seven Hills Farm, Inc.*, 4th Dist. Lawrence No. 1977, 1991 WL 224159, \*9 (Oct. 30, 1991) (forfeiture action cannot be sustained if the provisions of R.C. 5313.06 are not complied with prior to bringing the action); *Keene v. Schnetz*, 13 Ohio App.3d 87 (9th Dist.1983), paragraph one of the syllabus ("R.C. 5313.05 and 5313.06 create a statutory right to forfeiture when certain conditions are met.").

{¶43} Thus, the trial court did not err in dismissing American Servicing's complaint because American Servicing failed to provide adequate notice under R.C. 5313.06, which is requisite for forfeiture and restitution under R.C. 5313.08.

{¶44} We note that the trial court also concluded, based on American Servicing's noncompliance with R.C. 5313.06, that the trial court did "not yet have jurisdiction over the subject matter for forfeiture of the land contract," citing *Austin v. Sullivan*, 7th Dist. Mahoning No. 93CA43, 1994 WL 650228 (Nov. 17, 1994). In *Austin*, the Seventh District held that the appellee's failure to comply with R.C. 5313.06 deprived the trial court of jurisdiction over the subject matter of the land installment contract. *Id.* at *2. At least one district has questioned the Seventh District's conclusion in *Austin*. *State ex rel. Investco Mgt. Co. LLC v. Geauga Cty. Court of Common Pleas*, 11th Dist. Geauga No. 2012-G-3085, 2012-Ohio-4651, ¶ 19 (noting that the issue of whether the failure to comply with R.C. 5313.06 deprives a trial court of jurisdiction over the subject matter of the land contract is far from settled because *Austin* has never been followed). We need not, and do not, decide this issue in this case because the trial court ultimately dismissed the complaint, which was the proper disposition of the case in light of the trial court's conclusion that American Servicing failed to satisfy R.C. 5313.06.

{¶45} Therefore, American Servicing's assignments of error are overruled.

**{¶46}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**