[Cite as *HCF of Findlay, Inc. v. Bishop*, 2019-Ohio-319.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

HCF OF FINDLAY, INC., DBA
FOX RUN MANOR,

      PLAINTIFF-APPELLANT,                CASE NO.  5-18-20

      v.

NANCY J. BISHOP, ET AL.,             O P I N I O N

      DEFENDANTS-APPELLEES.

Appeal from Findlay Municipal Court
Trial Court No. 17-CVF-2083

Judgment Affirmed

Date of Decision:  February 4, 2019

APPEARANCES:

    *R.C. Wiesenmayer* for Appellant

    *Robert E. Feighner, Jr.* for Appellees

**ZIMMERMAN, P.J.**

{**¶1**} Plaintiff-appellant, HCF of Findlay, Inc., d.b.a. Fox Run Manor ("Fox Run Manor"), appeals the August 27, 2018 judgment of the Findlay Municipal Court granting summary judgment in favor of defendant-appellee, Nancy J. Bishop ("Bishop"), in her individual capacity, and dismissing Fox Run Manor's complaint against defendants-appellees, Bishop and Nancy J. Bishop, Executor of the Estate of Anna P. Weber ("Weber") (collectively "defendants"). For the reasons that follow, we affirm.

{**¶2**} On October 2, 2017, Fox Run Manor filed a breach-of-contract and quantum-meruit complaint seeking damages from Bishop for services provided to Weber—that were not otherwise paid for—for Weber's nursing-home care from October 1, 2016 through the date of Weber's death, December 23, 2016. (Doc. No. 1). Fox Run Manor also alleged a claim against Weber's estate. (*Id.*). Defendants filed their answer on October 30, 2017.[1] (Doc. No. 6).

{**¶3**} On March 16, 2018, Bishop filed a motion for summary judgment. (Doc. No. 17). Fox Run Manor filed its memorandum in opposition to Bishop's motion for summary judgment on April 2, 2018. (Doc. No. 18). On August 27,

---

[1] Defendants filed a motion for leave to file an amended answer on March 8, 2018, which the trial court granted on August 27, 2018. (Doc. Nos. 16, 20). The defendants' amended answer was filed that same day. (Doc. No. 21).

2018, the trial court granted summary judgment in favor of Bishop and dismissed the complaint.[2] (Doc. No. 22).

{¶4} Fox Run Manor filed its notice of appeal on September 24, 2018 and raises one assignment of error for our review.[3] (Doc. No. 23).

### Assignment of Error

**The Trial Court erred by finding that there was no Breach of Contract by Nancy J. Bishop when the Journal notes of April Holland clearly state that the Medicaid denial was due to the failure to establish a Qualified Income Trust (QIT) prior to November 28, 2016.**

{¶5} In its sole assignment of error, Fox Run Manor argues that the trial court erred by granting summary judgment in favor of Bishop after concluding that there was no genuine issue of material fact that Bishop did not breach the Care Community Residency Agreement (the "contract") she executed in favor of Fox Run Manor on behalf of Weber.[4] Specifically, Fox Run Manor argues that Bishop failed "to <u>cooperate</u> with the Medicaid application process as required by the unambiguous definitions contained in [the contract]" because "Bishop <u>never</u> applied to have a Qualified Income Trust [("QIT")] established until after the Medicaid denial was issued." (Underline sic.) (Appellant's Brief at 10).

---

[2] The trial court dismissed Fox Run Manor's claim against Weber's estate as not "properly presented as part of this lawsuit." (Doc. No. 22).

[3] Fox Run Manor's statement of its assignments of error presented for review differs from its argument containing its contentions with respect to each of those assignments of error. Rather, Fox Run Manor seemingly incorporates its four assignments of error included in its statement of the assignments of error into one argument or assignment of error. *See* App.R. 16(A)(3), (7). Accordingly, we will address Fox Run Manor's argument under its singular assignment of error.

[4] Fox Run Manor does not challenge the trial court's decision on its quantum-meruit claim.

*Standard of Review*

**{¶6}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶7}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶8} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 41. Even if we assume without deciding that the parties executed a valid contract, we conclude that there is no genuine issue of material fact that Bishop did not breach the contract in the manner described by Fox Run Manor.

{¶9} In order to determine whether there was a breach of the contract, we must interpret the terms of the contract. When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Reinhart v. Fostoria Plumbing, Heating & Elec. Supply, Inc.*, 3d Dist. Seneca No. 13-10-08, 2010-Ohio-4825, ¶ 16, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). "Courts presume that the intent of the parties to a contract resides in the language they chose to employ in the contract." *Judson v. Lyendecker*, 10th Dist. Franklin No. 12AP-615, 2013-Ohio-1060, ¶ 12, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "Ordinary words in a written contract must be 'given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Nippon Life Ins. Co. of Am. v. One Source Mgt., Ltd.*, 6th Dist. Lucas No. L-10-

1247, 2011-Ohio-2175, ¶ 22, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶10} "'If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'" *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). In that case, we apply a de novo standard of review. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶11} Here, the contract is clear and unambiguous. The portion of the contract that Fox Run Manor directs us to is as follows:

> 5. <u>Diversion of Resident's Resources</u>. * * * In addition, the Representative agrees to pay from his/her own resources any unpaid charges due to the Manor as a result of the Representative's failure to *cooperate* in the Medicaid eligibility or redetermination process.

(Underline sic.); (Italics added.) (Doc. No. 1, Ex. B). According to the terms of the contract, "cooperate" means:

> d. <u>Cooperation in Application Process.</u> You are obligated to make full and complete disclosure regarding all financial resources and income during the Medicaid application process, and to cooperate fully in providing all requested information. You agree to act promptly to establish and maintain the Resident's eligibility for Medicaid, including but not limited to, taking any and all necessary action to ensure that the Resident's assets are appropriately reduced

to and remain within allowable limits for Medicaid established by applicable law.

(Underline sic.) (*Id.*).

{¶12} Fox Run Manor's argument that Bishop breached the contract because she failed to cooperate with the Medicaid application process does not accurately reflect the terms of the contract—that is, the contract required Bishop to cooperate in the Medicaid eligibility *or* redetermination process. Further, the contract does not define "cooperate" as ensuring that the initial application be approved in the Medicaid eligibility process. Contrary to Fox Run Manor's argument, even when viewing the evidence in its favor, reasonable minds can reach only the conclusion that Bishop did *not* breach the contract. In particular, reasonable minds can conclude only that Bishop cooperated in the Medicaid eligibility and redetermination process in the manner described in the contract.

{¶13} In reaching this conclusion, we conclude, first, that there is no genuine issue of material fact that Bishop acted promptly to establish Weber's eligibility for Medicaid. Indeed, there is no dispute that Weber was admitted to Fox Run Manor on October 1, 2016 and that Bishop applied for Medicaid benefits on Weber's behalf through the Ohio Department of Job and Family Services ("ODJFS") on October 24, 2016.[5]

---

[5] It is undisputed that: (1) Bishop paid Fox Run Manor $6,810.00 out of Weber's private funds for Weber's care for the month of October 2016; (2) Bishop paid Fox Run Manor $2,220.00 out of Weber's private funds in December 2016 for Weber's care; and (3) Weber's long-term care insurance was making payments to Fox Run Manor for Weber's care. (*See* Doc. No. 17).

**{¶14}** Further, there is no genuine issue of material fact that Bishop made a full and complete disclosure of Weber's financial resources and income during the Medicaid application process and cooperated fully in providing all requested information. Fox Run Manor did not rebut this evidence with specific facts that Bishop did not provide sufficient information for ODJFS to determine Weber's Medicaid eligibility. Rather, it is clear that Bishop provided sufficient information for the ODJFS caseworker assigned to Weber's application, April Holland ("Holland"), to determine whether Weber's resources exceeded the threshold necessary to be eligible for Medicaid benefits.

**{¶15}** Moreover, there is no genuine issue of material fact that, after the initial application was denied, Bishop cooperated in the Medicaid redetermination process in the manner described in the contract. That is, Bishop took the necessary action to appropriately reduce Weber's assets to the allowable limit to be eligible for Medicaid benefits. Specifically, Bishop established a Qualified Income Trust ("QIT"), which is "a trust that allows an individual whose income is over the special income level (SIL), as described in rule 5160:1-6-03.1 of the Administrative Code, to have some or all of his or her income not be counted when determining medicaid eligibility by placing income in the trust." Ohio Adm.Code 5160:1-6-03.2(B)(6).

**{¶16}** Indeed, it is undisputed that, after the initial Medicaid application was denied on November 29, 2016, Bishop met with Joel Baird ("Baird"), a representative of Automated Health Systems, on December 9, 2016 to establish a

QIT on Weber's behalf. The QIT was then established on December 15, 2016. "The Qualified Income Trust documents were submitted to the County Department of Job and Family Services on December 16, 2016." (Doc. No. 17). *See also* Ohio Adm.Code 5160:1-6-03.2(I). Accordingly, we conclude that there is no genuine issue of material fact that Bishop cooperated in the Medicaid redetermination process by attempting to resolve the initial-benefits denial at the caseworker level by establishing the QIT and notifying Holland as such.

{¶17} Fox Run Manor did not rebut the evidence described above with specific facts demonstrating that Bishop did *not* cooperate in the Medicaid eligibility or redetermination process in the manner described by the contract. Rather, Fox Run Manor relied on its allegation contained in the complaint that Bishop breached the contract because by not cooperating in the Medicaid eligibility process since Weber's initial application was denied.

{¶18} Furthermore, notwithstanding Fox Run Manor's argument, Bishop cooperated in Weber's Medicaid eligibility process by providing to Holland the information necessary to determine whether Weber's resources exceeded the SIL. Only after Holland determined that Weber's resources exceeded the SIL could Bishop establish a QIT. "A QIT can only be used to establish medicaid eligibility by an individual whose income is above the SIL, who is eligible for LTC services covered by the Ohio medicaid program, and who is subject to the calculation of

patient liability under rules 5160:1-6-07 and 5160:1-6-07.1 of the Administrative Code." Ohio Adm.Code 5160:1-6-03.2(C).

**{¶19}** Therefore, Fox Run Manor's argument that Bishop breached the contract because she did not establish the QIT during the Medicaid eligibility process is misplaced. Thus, Fox Run Manor cannot demonstrate that Bishop breached the contract by failing to cooperate in the Medicaid eligibility or redetermination process in the manner described in the contract to avoid summary judgment. In addition, we caution Fox Run Manor's zealous pursuit of damages in breach-of-contract actions where it has broadly drafted its contract by including such terms as "cooperating," while minimizing a relatively narrow window-of-time concerning government-benefit determinations. Accordingly, Fox Run Manor's assignment of error is overruled.

**{¶20}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**