[Cite as *Texas Ins. Co. v. Rodriguez*, 2025-Ohio-417.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

TEXAS INSURANCE COMPANY,

       PLAINTIFF-APPELLANT/
       CROSS-APPELLEE,

CASE NO. 16-24-09

   v.

EARL RODRIGUEZ, ET AL.,

       DEFENDANTS-APPELLEES,

  -And-

RETAIL DIRECT, LLC

       DEFENDANT-APPELLEE/
       CROSS-APPELLANT,

                O P I N I O N

  -And-

FINAL TOUCH LOGISTICS, LLC, ET AL.

       DEFENDANTS-APPELLEES/
       CROSS-APPELLANTS,

  -And-

KERNAN INSURANCE AGENCY, INC.,

       THIRD-PARTY DEFENDANT/
       CROSS-APPELLANT.

**Appeal from Wyandot County Common Pleas Court**
**Civil Division**
**Trial Court No. 23-CV-0027**

**Judgment Affirmed**

**Date of Decision: February 10, 2025**

**APPEARANCES:**

*Christopher R. Walsh* **for Appellant Texas Insurance Company**

*Loni R. Sammons* **for Cross-Appellants, Final Touch Logistics, LLC and Kenneth Morton**

*Ray C. Freudiger* **for Cross-Appellant Kernan Insurance Agency, Inc.**

*Nathan A. Hall* **for Cross-Appellant Retail Direct, LLC**

*James E. Yavorcik* **for Appellees Earl and Nanci Rodriguez**

**WALDICK, P.J.**

{¶1} This case involves an appeal and three cross-appeals from the April 26, 2024 judgment of the Wyandot County Court of Common Pleas, stemming from an insurance coverage dispute related to a personal-injury action filed as a result of a vehicular accident that occurred on May 19, 2022 in Upper Sandusky, Ohio. The tort action, which was filed separately in the trial court, sought damages for injuries sustained by defendants-appellees Earl and Nanci Rodriguez ("the Rodriguezes") when the Rodriguezes' motorcycle collided with a box truck driven by defendant-

appellee/cross-appellant Kenneth Morton ("Morton"). At that time, Morton was driving for hire for defendant-appellee/cross-appellant Final Touch Logistics, LLC ("Final Touch"), who had a contractual arrangement with defendant-appellee/cross-appellant Retail Direct, LLC ("Retail Direct"). At the time of the accident, Final Touch had a policy of liability insurance with $1,000,000.00 of coverage for its drivers that had been issued by plaintiff-appellant, Texas Insurance Company ("Texas Insurance"), which Final Touch had purchased through its insurance agent, third-party defendant-appellee/cross-appellant Kernan Insurance Agency, Inc. ("Kernan").

*Procedural History*

**{¶2}** The action directly underlying these appeals originated with a complaint filed in the trial court on March 14, 2023 by Texas Insurance. In that complaint, Texas Insurance sought declaratory judgment that the limits of coverage under the liability policy for the accident at issue were $25,000.00 per person and $50,000.00 per occurrence for bodily injury, and $25,000.00 per occurrence for injury to property, being the mandatory minimum amounts of liability insurance coverage required by R.C. 4509.51. While the policy at issue provided $1,000,000.00 of coverage for Final Touch drivers who had been added to the policy after being approved by Texas Insurance, the complaint alleged that Morton was not an approved driver under the policy. Therefore, pursuant to language of the policy relating to non-approved but permissive drivers, Texas Insurance asserted that

Morton was only entitled to coverage at the levels of the mandatory minimum liability coverage requirements set forth in R.C. 4509.51.

{¶3} On April 13, 2023, the Rodriguezes answered and counterclaimed for declaratory judgment that the liability policy provided coverage for Morton up to the policy limit of $1,000,000.00. Alternatively, the Rodriguezes sought declaratory judgment that the liability coverage was $750,000.00 per accident.

{¶4} On May 2, 2023, Final Touch answered and counterclaimed for declaratory judgment that the $1,000,000.00 coverage limit of the policy was applicable, due to the representation allegedly made by Kernan, prior to the accident, that Morton was an approved driver insured under the policy.

{¶5} On June 6, 2023, Retail Direct answered and counterclaimed for declaratory judgment that the full $1,000,000.00 coverage limit of the policy was applicable, on the theory that Texas Insurance, directly or through an agent, represented to Final Touch that Morton was an approved driver under the policy.

{¶6} On June 28, 2023, Final Touch filed a third-party complaint against Kernan, alleging that Kernan was negligent in performing its duties as Final Touch's insurance agent. Specifically, the third-party complaint alleged that Kernan failed to have Morton approved as a driver under the policy and that, having failed to do so, nevertheless informed Final Touch that Morton was an approved driver.

{¶7} On July 24, 2023, Kernan filed an answer to Final Touch's third-party complaint and raised multiple affirmative defenses, including a claim that Texas Insurance improperly refused to provide liability coverage for Morton.

{¶8} On September 7, 2023, Texas Insurance obtained a default judgment against Morton, which the trial court later set aside pursuant to Civ.R. 60(B), and Morton then also answered the complaint.

{¶9} On January 16, 2024, the Rodriguezes moved for summary judgment against Texas Insurance, arguing that the insurance policy's stated limit of liability coverage in the amount of $1,000,000.00 should apply if Final Touch or its driver were to be found liable in the underlying tort action. In asserting that $1,000,0000.00 of coverage applied, the Rodriguezes argued in their motion that the deposition testimony in the case established that Corey Sturgill, owner of Final Touch, used the Kernan Insurance Agency to obtain insurance for his trucking company, that Sturgill never communicated directly with Texas Insurance or its underwriting team, and that Sturgill dealt solely with Kernan representative Scott Bowen when purchasing the insurance policy and in subsequently adding new drivers and vehicles to the policy once purchased. The Rodriguezes argued that the deposition testimony established that in March of 2022, Sturgill requested of Bowen that additional drivers, including Morton, be added to the policy and that, on March 23, 2022, Bowen sent Sturgill an email listing the drivers currently covered by the policy, including Morton. The Rodriguezes' motion noted that Sturgill's deposition

testimony was that he relied upon the email from Bowen and believed that Morton had been added to the policy. The Rodriguezes' motion further noted that Bowen testified in his deposition that he had indeed electronically signed an updated list of drivers that included Morton's name and sent it to Sturgill but that, through an oversight, Bowen never forwarded the March 23, 2022 list of new drivers to Texas Insurance or its underwriting team for review. On the basis of those facts, the Rodriguezes asserted that Morton, through Final Touch, had $1,000,000.00 of liability coverage at the time of the accident at issue. Alternatively, the Rodriguezes asserted in their motion that $750,000.00 of coverage was available pursuant to the permissive-user clause in the policy, because that amount is the "state minimum" for trucks transporting goods for hire in Ohio, pursuant to the Ohio Revised Code and the Ohio Administrative Code, and also because that was the amount set forth in the MCS-90 endorsement to the insurance policy, as required by federal law for commercial trucks involved in interstate driving. As to that first argument, the Rodriguezes noted that Texas Insurance was not disputing that Morton was at least a "permissive user" under the policy and, pursuant to language contained in the policy regarding permissive users, Morton was therefore entitled to coverage "to the extent permitted under the applicable state law, * * * to the state mandatory minimums for bodily injury or death."

{¶10} On February 14, 2024, Final Touch and Morton filed a joint motion for summary judgment, arguing that the insurance policy's stated limit of liability

coverage in the amount of $1,000,000.00 was applicable, due to either (1) Final Touch's contingent liability in the tort case, or (2) Texas Insurance being bound by the acts of its agent, Kernan, in representing that Morton was a covered driver under the policy. Alternatively, Final Touch and Morton asserted in their motion that $750,000.00 of coverage was available under the permissive-user clause in the policy, as $750,000.00 is the amount of minimum coverage required by Ohio's trucking regulations, and also by the MCS-90 form included with the policy, as federal regulations require $750,000.00 of minimum insurance coverage for interstate carriers, which Morton was at times.

{¶11} On February 27, 2024, Final Touch, in its capacity as third-party plaintiff, filed a motion for summary judgment against third-party defendant Kernan Insurance Agency. In that motion, Final Touch argued that, in the event the trial court determined that coverage under the insurance policy was less than $1,000,000.00, then Final Touch was entitled to compensatory damages against Kernan in an amount equal to Final Touch's liability to the Rodriguezes, plus attorneys' fees, litigation expenses, and court costs.

{¶12} On February 28, 2024, Texas Insurance filed a motion for summary judgment, arguing that the full coverage amount of $1,000,000.00 was not available because Morton was not an approved driver under the policy, and asserting that the permissive-user clause in the policy providing for coverage in the amount of the "statutory minimums" meant that coverage of $50,000.00 for the occurrence was

available pursuant to R.C. 4509.51, which sets forth mandatory minimum limits of liability insurance in Ohio.

{¶13} On February 29, 2024, Kernan filed a motion for summary judgment, asserting that the minimum coverage owed by Texas Insurance was $750,000.00.  In support of that claim, Kernan pointed to the "statutory minimums" language in the policy setting forth coverage for permissive users, and argued that the applicable statutory minimum under Ohio law was $750,000.00 pursuant to O.A.C. 4901:2-13-03(A), which sets forth minimum levels of financial responsibility for for-hire motor carriers.

{¶14} On February, 29, 2024, Kernan also filed a motion for leave to file an amended answer with a counter-claim instanter against Texas Insurance.

{¶15} On March 1, 2024, Retail Direct filed a motion for summary judgment, arguing that the full $1,000,000.00 policy limit was available.  Retail Direct argued that the conduct and representations of Kernan as an agent for Texas Insurance were justifiably relied upon by Final Touch in believing that Morton was an approved driver, and therefore Texas Insurance was bound by the representations of its agent.  Alternatively, Retail Direct argued that if the trial court determined that Texas Insurance was not bound by Kernan's conduct and that Morton was not an approved driver, then the applicable "statutory minimum" pursuant to the policy's permissive-user clause would be $750,000.00, under R.C. 4921.09 and O.A.C.

4901:2-13-03, which set forth minimum levels of financial responsibility for for-hire motor carriers in Ohio.

{¶16} On March 21, 2024, the trial court granted Kernan's motion for leave to file instanter an amended answer and counter-claim against Texas Insurance.

{¶17} On April 15, 2024, Texas Insurance answered Kernan's cross-claim, and filed a counter-claim against Kernan, alleging that Kernan lacked authority to add Morton to the policy, that Kernan had never requested of Texas Insurance or its underwriting affiliate, Rivington Partners, that Morton be added to the policy, and that Kernan was negligent in informing Final Touch that Morton had been added to the policy.

{¶18} On April 16, 2024, a hearing was held on the motions for summary judgment, at which time counsel for the parties presented argument in support of their various summary judgment positions.

{¶19} On April 26, 2024, the trial court filed a decision in the case. In that judgment, the trial court found in favor of Texas Insurance to the extent that the court held that coverage under the insurance policy is not $1,000,000.00, on the basis that Morton was not an approved driver under that policy. The trial court found in favor of Final Touch, Morton, Retail Direct, the Rodriguezes, and Kernan to the extent that the court held that the coverage under the permissive-user clause of the policy is $750,000.00. The trial court further found in favor of Final Touch in holding that Kernan is liable to any insured under the policy for the difference

between the $1,000,000.00 of liability coverage intended to be in place pursuant to the policy and the $750,000.000 of coverage that the trial court determined is actually in place.[1] The trial court denied Final Touch's request for an award of attorneys' fees against Kernan.

{¶20} On May 23, 2024, Texas Insurance filed a notice of appeal of the judgment entered in the trial court on April 26, 2024, denying Texas Insurance's motion for summary judgment.

{¶21} On May 31, 2024, Retail Direct filed a notice of cross-appeal of the April 26, 2024 judgment.

{¶22} On May 31, 2024, Final Touch and Kenneth Morton filed a joint notice of cross-appeal of the April 26, 2024 judgment.

{¶23} On June 3, 2024, Kernan filed a notice of cross-appeal of the April 26, 2024 judgment.

*Appeal by Texas Insurance – Assignments of Error*

{¶24} In the appeal filed by Texas Insurance, the following four assignments of error have been raised.

### First Assignment of Error

**The trial court erred to the prejudice of plaintiff/appellant when it granted the summary judgment motions of defendants/appellees that the statutory minimum intended by the insurance contract in question is $750,000.00**

---

[1] Pursuant to the trial court's overall decision and the fact that the separate tort action remains pending, we note that the trial court's finding regarding Kernan's liability of up to $250,000.00 becomes applicable only in the event the Rodriguezes obtain a judgment in excess of $750,000.00 against an insured under the policy.

**Second Assignment of Error**

**The trial court erred to the prejudice of plaintiff/appellant when it failed to apply the plain meaning of the phrase "statutory minimum" when construing the insurance contract at issue.**

**Third Assignment of Error**

**The trial court erred to the prejudice of plaintiff/appellant when it ruled in favor of defendants without first finding that the phrase "statutory minimum" was ambiguous.**

**Fourth Assignment of Error**

**The trial court erred to the prejudice of plaintiff/appellent [*sic*] when it applied the MCS-90 to the facts of this case.**

{¶25} In each of those four assignments of error, which we shall collectively address, Texas Insurance asserts that the trial court erred in determining that the insurance policy at issue requires that Texas Insurance provide liability coverage of $750,000.00 under the permissive-user clause of the policy.

{¶26} "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire and Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 8, citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). *See also* R.C. 2721.03.

{¶27} "[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability, and should apply a de novo standard of review in regard to

the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1.

**{¶28}** Additionally, we note that appellate courts also conduct a de novo review of trial court decisions granting a motion for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court must conduct an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 23 (3d Dist.).

Civ.R. 56(C) provides, in relevant part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

**{¶29}** "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Tharp v. Whirlpool Corp.*, *supra*, at ¶ 24, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶30} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." *Id*., citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, paragraph three of the syllabus (1991).

{¶31} In the instant case, pursuant to Civ.R. 56(C), the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the case at or before the summary judgment stage, reflect the following uncontested facts.

{¶32} Corey Sturgill started Final Touch Logistics, LLC in 2021. In late 2021, Final Touch sought to provide logistics services for Lowe's Home Improvement through a contract with Retail Direct. Retail Direct required that Final Touch obtain liability insurance with a $1,000,000.00 policy limit. To assist with the insurance needs of the new business, Sturgill used the Kernan Insurance Agency and, specifically, dealt with Kernan account manager Scott Bowen. Through Bowen, Sturgill purchased a policy of liability insurance for Final Touch drivers and vehicles from Texas Insurance in November of 2021, with $1,000,000.00 of coverage as required by Retail Direct.

**{¶33}** Pursuant to the terms of the policy, Final Touch was required to disclose all drivers who would be operating a vehicle covered by the policy and any potential driver had to be approved by Texas Insurance's underwriters, Rivington Partners, before that driver could be added to the policy and be covered thereby. After the policy initially took effect, and as Sturgill's business grew, it became necessary for him to request that drivers be added or removed from the policy. To add or remove a driver, Sturgill would notify Bowen at Kernan of the requested change, and Bowen would then notify the underwriting team for Texas Insurance, Rivington Partners, who had the final say in approving or not approving a driver. Once a driver was approved or disapproved, Bowen would then typically email or text Sturgill to let him know. Sturgill never had any contact whatsoever with Texas Insurance or its underwriters, and neither Texas Insurance or Rivington Partners ever provided any paperwork directly to Sturgill with regard to which drivers had been approved for coverage.

**{¶34}** In March of 2022, Morton applied to be a commercial driver for Final Touch. On March 23, 2022, at 9:04 a.m., Sturgill requested via text message to Bowen that Bowen arrange to have Morton added as a driver on the policy. Specifically, Sturgill's text read, "Morning, Scott. Want to add a guy and start a 4th truck tomorrow. Can you run and let me know asap. I have to let lowes [*sic*] know asap". Sturgill included a photo of Morton's driver's license in that text to Bowen. Approximately half an hour later, Sturgill sent Bowen a second text that

read, "Then, if you could send me a [*sic*] active roster. I have to give to Lowes [*sic*] when I meet at 1115 this morning. It has to be on a letter head with the roster. Please and thanks".

{¶35} That same morning, Bowen checked Morton's driving history and found nothing that, in Bowen's opinion, would have resulted in Morton not being approved for coverage by the underwriters. Later that same morning, Sturgill again texted and also called Bowen asking for an update on his request concerning Morton, as Sturgill was anxious to have the information before his meeting with Lowe's.

{¶36} In response to Sturgill's final text and phone call, Bowen sent Sturgill an email at 11:01 a.m. That email read, "Hey Corey, [d]river list attached. Let me know if anything else is needed. Thanks, Scott Bowen." Directly underneath Bowen's name in the email was "Kernan Insurance Agency, Inc.", along with the business address and other contact information for the insurance agency. The letter-type document attached to Bowen's email was captioned at the top as being from "Kernan Insurance Agency, Inc." at their business address in Powell, Ohio. That attached letter read, "To whom it may concern, [b]elow is a current driver list for Final Touch Logistics LLC[.]" The letter then listed ten persons by first and last name, with the final name on that list being "Kenneth Morton." The letter was electronically signed "Scott Bowen" and, underneath the electronic signature, was typed "Scott Bowen" and "Agent".

-15-

**{¶37}** As a result of receiving that email and letter from Bowen, Sturgill hired Morton to begin driving for Final Touch. However, through some oversight, Bowen never forwarded Morton's name or other information to Texas Insurance or its underwriting team, and therefore Morton was never reviewed for approval, much less added, as an insured driver under the policy. Bowen had no further communication with Sturgill regarding Morton's status under the insurance policy.

**{¶38}** On May 19, 2022, Morton was driving for Final Touch when he was involved in the accident with the Rodriguezes, in which Morton is alleged to have been at fault. On the day of the accident, Morton had thirteen stops on his route, all of which were in central Ohio. The box truck Morton was driving that day weighed over 10,000 pounds.

**{¶39}** Upon Final Touch seeking to open a claim as a result of the accident, Sturgill was informed by Texas Insurance and also by the Kernan agency that Texas Insurance would not provide the $1,000,000.00 of coverage because Morton was not an approved drive covered by the policy.

**{¶40}** However, the insurance policy at issue also contained a permissive-user clause, which provides:

> "Permissive users" who are users of a covered auto, other than "insureds", who are not approved in writing by the Company. Coverage for permissive users is subject to reduction to statutory minimums. To the extent permitted under the applicable state law, the limits of coverage shown in the Declarations page are reduced to the state mandatory minimums for bodily injury or death

and property damage when there is a permissive user of the covered "auto".

**{¶41}** Pursuant to that clause, Texas Insurance's position was, and still is, that bodily injury coverage in the amount of $25,000 per person/$50,000 per accident is the maximum coverage available for the accident at issue, because those limits are the "statutory minimums" in Ohio pursuant to R.C. 4509.51.

**{¶42}** Contrary to the position of Texas Insurance, the defendants in this case, along with third-party defendant Kernan, have taken the position that $750,000.00 of coverage is available pursuant to the permissive-user clause, because that amount is the "state mandatory minimum" of financial responsibility required for trucks transporting goods for hire in Ohio, pursuant to R.C. 4921.09 and O.A.C. 4901:2-13-03.

**{¶43}** In the April 26, 2024 judgment at issue in this appeal, the trial court found on the evidence before it that Morton was not an approved driver under the policy. Accordingly, the trial court determined that the question of how much coverage Texas Insurance must potentially provide with regard to Morton's collision with the Rodriguezes' motorcycle is dictated by the "permissive user" language in the policy. After reviewing the language of the permissive-user clause, the trial court found that the $750,000.00 minimum level of financial responsibility set forth in O.A.C. 4901:2-13-03 for any for-hire motor carriers over ten thousand pounds, as required be set by the Public Utilities Commission of Ohio pursuant to

R.C. 4921.09, is the level of coverage required by the language of the policy's permissive-user clause.

**{¶44}** Following our de novo review of the record and the relevant law, we conclude that the trial court was correct in those determinations.

**{¶45}** First, as the trial court found, the undisputed evidence in the case establishes that Morton was not an approved driver under the policy. The underwriting team at Rivington Partners was the only entity with the authority to approve or disapprove drivers for coverage before a driver could be added to the policy, and Morton's name was never forwarded to them for review. Accordingly, Morton was never approved for coverage under the policy.

**{¶46}** However, as it is not disputed that Morton was a permissive user under the policy at the time of the accident, we move on to consider what coverage is required by the language of the policy's permissive-user clause.

**{¶47}** "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.'" *Tuthill Energy Systems v. Employers Ins. of Wausau*, 2004-Ohio-1394, ¶ 7 (3d Dist.), quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 2002-Ohio-2842, ¶ 8. "Common words in a contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the

face or overall contents of the agreement." *Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶ 34. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Tuthill Energy Systems*, *supra*, at ¶ 7, citing *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, paragraph one of the syllabus (1987).

**{¶48}** In the instant case, as previously noted, the policy language at issue reads as follows:

> "Permissive users" who are users of a covered auto, other than "insureds", who are not approved in writing by the Company. Coverage for permissive users is subject to reduction to statutory minimums. To the extent permitted under the applicable state law, the limits of coverage shown in the Declarations page are reduced to the state mandatory minimums for bodily injury or death and property damage when there is a permissive user of the covered "auto".

**{¶49}** Based upon the phrase "statutory minimums" in that clause, Texas Insurance asserts that the provisions of R.C. 4509.51 determine the applicable permissive-user coverage in this case.

> R.C. 4509.51 provides:
>
> Subject to the terms and conditions of an owner's policy, every owner's policy of liability insurance:
>
> (A) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby granted;
>
> (B) Shall insure the person named therein and any other person, as insured, using any such motor vehicles with the express or implied permission of the insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicles within the United States or Canada, subject to monetary

limits exclusive of interest and costs, with respect to each such motor vehicle, as follows:

(1) Twenty-five thousand dollars because of bodily injury to or death of one person in any one accident;

(2) Fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident;

(3) Twenty-five thousand dollars because of injury to property of others in any one accident.

{¶50} However, the defendants in this case argue, and the trial court found, that the provisions of R.C. 4921.09 and O.A.C. 4901:2-13-03 dictate the applicable coverage here pursuant to the language of the permissive-user clause in the policy.

R.C. 4921.09 provides in relevant part:

(A) No certificate of public convenience and necessity shall be issued by the public utilities commission to any for-hire motor carrier until the carrier has filed with the commission a liability insurance certificate, policy, or bond satisfactory to the commission, in the sum and with the provisions the commission considers necessary adequately to protect the interests of the public, having due regard for the number of persons and amount of property affected. The certificate, policy, or bond shall insure the carrier against loss sustained by reason of death or injuries to persons and for loss or damage to property resulting from the negligence of the carrier.

(B) No certificate for the transportation of household goods shall be issued to a for-hire motor carrier pursuant to sections 4921.30 to 4921.38 of the Revised Code until it has filed with the commission a freight cargo insurance certificate, policy, or bond that the commission has determined to be adequate to protect the interests of the shipping public.

(C) The Commission shall adopt rules to achieve the purposes of this section that are not incompatible with the requirements of the United States department of transportation. The rules shall at a minimum address all of the following:

(1) The minimum levels of financial responsibility for each type of for-hire motor carrier[.]

**{¶51}** As required by R.C. 4921.09(C)(1), O.A.C. 4901:2-13-03 then sets forth the minimum levels of financial responsibility required in Ohio for for-hire motor carriers engaged in the transportation of property in intrastate commerce. As provided in O.A.C. 4901:2-13-03, the minimum levels of financial responsibility covering public liability are $750,000.00, unless the for-hire motor carrier exclusively operates motor vehicles with a gross vehicle weight rating or a gross combination rating of less than ten thousand one pounds, in which case the for-hire motor carrier must maintain minimum levels of financial responsibility covering public liability in the amount of $350,000.00.

**{¶52}** Texas Insurance does not dispute that the truck driven by Morton at the time of the accident was a "for-hire motor carrier" subject to the minimum levels of financial responsibility set forth in R.C. 4921.09 and O.A.C. 4901:2-13-03. Rather, Texas Insurance simply argues that the phrase "statutory minimums" in the policy's permissive-user clause dictates that the mandatory minimums set forth in R.C. 4509.51 apply here, as no minimums are set forth in R.C. 4921.09 and because O.A.C. 4901:2-13-03 is an administrative code section, not a statute.

**{¶53}** We find that the argument made by Texas Insurance lacks merit for two reasons. First, while the permissive-user clause does contain the term "statutory minimums", that term is actually used in the sentence stating that "[c]overage for

permissive users is subject to reduction to statutory minimums." Texas Insurance's position disregards both the conditional language of "subject to reduction", and the fact that that introductory sentence is then further expanded upon in the policy by language stating, "*To the extent permitted under the applicable state law*, the limits of coverage shown in the Declarations page are reduced to the *state mandatory minimums* * * * ." (Emphasis added.) Notably, the word "statute" does not appear in the sentence specifically dictating what the reduction in coverage will be for permissive users; rather, that sentence uses the term "state mandatory minimums", which – for trucks such as that driven by Morton – are set forth in O.A.C. 4901:2-13-03. Secondly, to the extent that the policy language could even arguably be construed to mean that the reduced limits must be strictly "statutory", we note that R.C. 4921.09 is also a statute. That statute requires that mandatory minimum levels of financial responsibility be set for for-hire motor carriers in Ohio, including the truck driven by Morton, and the fact that those statutorily required minimums are contained within a corresponding section of the Ohio Administrative Code does not change the fact that those minimum limits are mandated by statute.

{¶54} Therefore, based upon the clear and unambiguous language of the permissive-user clause in the policy and in light of the state mandatory minimums applicable to the truck driven by Morton at the time of the accident, we find that the trial court did not err in determining that $750,000.00 in coverage is required under

the policy and in overruling Texas Insurance's motion for summary judgment to the contrary.

**{¶55}** The four assignments of error raised by Texas Insurance are overruled.

*Cross-Appeal by Retail Direct – Cross-Assignments of Error*

**{¶56}** In the cross-appeal filed by Retail Direct, no cross-assignments of error have been raised. Accordingly, that cross-appeal will be dismissed.

*Joint Cross-Appeal by Final Touch and Morton – Cross-Assignments of Error*

**{¶57}** In the cross-appeal filed jointly by Final Touch and Morton, the following two cross-assignments of error have been raised.

**First Cross-Assignment of Error**

**The trial court erred in holding that the policy issued to Cross-Appellant Final Touch Logistics, LLC does not afford coverage of $1,000,000.**

**Second Cross-Assignment of Error**

**The trial court erred in denying Cross-Appellant Final Touch Logistics, LLC's request for an award of attorneys' fees against Appellee Kernan Insurance Agency, Inc.**

**{¶58}** In its first cross-assignment of error, Final Touch and Morton assert that the trial court erred in failing to find that Texas Insurance was required to provide liability coverage of $1,000,000.00, on the basis of Final Touch's claim that Kernan acted as Texas Insurance's agent, and therefore bound Texas Insurance, when Kernan represented to Final Touch that Morton was an approved driver under

the policy. Final Touch's and Morton's argument in this regard is based on the theory of apparent authority.

**{¶59}** As previously noted, we apply a de novo standard of review in regard to a trial court's determination of legal issues in a case seeking declaratory judgment. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1. As further noted above, an appellate court also subjects a trial court decision granting summary judgment to de novo review. *Smathers Glass*, 2022-Ohio-4595, ¶ 30. In other words, this Court on appeal must undertake an independent review of the summary judgment without according deference to the trial court. *Id*.

**{¶60}** In reviewing the merits of a motion for summary judgment, Civ.R. 56 requires both courts to view the evidence presented in a light most favorable to the nonmoving party. Civ.R. 56(C). To prevail on a summary judgment motion, the moving party must then demonstrate that no genuine issue of material fact remains to be litigated, and it appears from the evidence that reasonable minds can only reach one conclusion. *State ex Rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511 (1994).

**{¶61}** With respect to Final Touch's and Moton's claim that Kernan was an agent for Texas Insurance, R.C. 3929.27 provides that "[a] person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy." Similarly, in *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605 (1992),

the Supreme Court of Ohio held that "[a]n insurance broker [or independent insurance agent] becomes an agent for a particular insurer when: (1) the broker notifies its customer that he or she intends to place the customer's insurance coverage with a particular insurer; or (2) the broker accepts an application for insurance on behalf of the customer." *Id.*, at 612.

**{¶62}** Additionally, as the Ohio Supreme Court also noted in *Damon's Missouri, Inc.*:

> It is a principle of agency law that an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal. *Saunders v. Allstate Ins. Co.* (1958), 168 Ohio St. 55, 58–59, 5 O.O.2d 303, 305, 151 N.E.2d 1, 4. As we recently noted in *Master Consolidated Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 574, 575 N.E.2d 817, 820, "'* * * [e]xpress authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred. * * *'" (Citing *Stevens v. Frost* [1943], 140 Me. 1, 7, 32 A.2d 164, 168.) The agent's implied authority may also arise from the express delegation of actual authority and unless its extent is otherwise expressly limited, implied authority carries with it the power to do all that which is reasonably necessary to carry into effect the power actually conferred. *Spengler v. Sonnenberg* (1913), 88 Ohio St. 192, 200–201, 102 N.E. 737, 739.

*Id.*, at 608.

**{¶63}** "[A]n agent's authority to contract on behalf of its principal is ordinarily limited to the scope of the authority granted by the principal. *See Winpenny v. French,* 18 Ohio St. 469, 474–475 (1869) (explaining that when an agent exceeds its authority, the principal is not bound unless the

principal later ratifies the agent's actions)." *State v. Billingsley*, 2012-Ohio-4307, ¶ 26. However, "[w]hen an agent lacks actual authority, a principal is still bound by the acts of the agent under the theory of apparent authority when '(1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) * * * the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.'" *Id*., quoting *Master Consol. Corp. v. BancOhio Natl. Bank,* 61 Ohio St.3d 570 (1991), syllabus.

**{¶64}** In the instant case, Final Touch and Morton argue that the theory of apparent authority supports the claim that Kernan, as an agent of Texas Insurance, bound Texas Insurance to provide full coverage of $1,000,000.00 under the insurance policy as a result of Kernan's account manager, Bowen, representing to Final Touch owner Sturgill that Morton was covered by the policy after Sturgill requested of Bowen that Morton be added as a driver. However, the record does not support that legal assertion by Final Touch and Morton.

**{¶65}** In that regard, we first note the uncontested facts found in the record that are set forth in detail, *supra*, and incorporate the same here by reference. To summarize, it is undisputed that Sturgill requested of Bowen that Morton's driving record be reviewed and that Morton be added to the policy as an approved driver. In response, while Bowen did run Morton's driving record and believed that Morton

-26-

was eligible to be added as an approved driver, Bowen neglected to submit Morton's name and information to Rivington Partners, the underwriting team for Texas Insurance, for the required review and approval. Nevertheless, Bowen then represented to Sturgill that Morton had been added to the policy as requested.

{¶66} However, contrary to the assertions made by Final Touch and Morton, the record also reflects that Bowen had no authority, actual or apparent, to represent to Sturgill that Morton was covered by the policy, without Morton first being approved by the underwriting team. In the depositions given by Eric Greenberg, chief underwriting officer of the transportation programs at Rivington Partners, Greenberg testified that Rivington is a brand at Applied Underwriters and that Texas Insurance Company is owned by the management team of Applied Underwriters. Greenberg's deposition testimony further reflected that, at the time in question, two underwriters at Rivington Partners, named John Ericson and Debbie Bulik, were the two persons with decision-making authority when additional drivers were submitted for approval with regard to the policy issued to Final Touch. The testimony given by Scott Bowen in his own deposition also quite clearly confirmed that the underwriters at Rivington had the right to approve or disapprove any driver that Bowen submitted for potential coverage, and that the decision was not Bowen's to make.

{¶67} Nowhere in the record does there appear any information to the contrary with regard to the approval process for adding drivers to the policy and, in

particular, the record contains no evidence supporting the claim that Bowen had the apparent authority to approve drivers. Put another way, the record lacks any evidence that Texas Insurance held Bowen, or the Kernan agency, out to the public as possessing sufficient authority to approve drivers for addition to the policy, or that Texas Insurance knowingly permitted Bowen, or Kernan, to act as having such authority, as would be required to support the apparent authority claim made by Final Touch and Morton. Accordingly, Bowen's representation to Sturgill that Morton had been approved, or added to the policy, was made without any authority to do so.

{¶68} For those reasons, the first cross-assignment of error raised by Final Touch and Morton is overruled.

{¶69} In the second cross-assignment of error, Final Touch asserts that the trial court erred in failing to award attorneys' fees to Final Touch against Kernan, following the trial court's determination that Kernan is liable to Final Touch or Morton for up to the $250,000.00 loss in coverage under the policy, due to Kernan's failure to add Morton to Final Touch's insurance policy and then erroneously representing to Final Touch that Morton had been added to the policy.

{¶70} In support of this cross-assignment of error regarding attorneys' fees, Final Touch relies strictly upon two decisions of the Tenth District Court of Appeals, *Great Oaks Co., Inc. v. Cincinnati Ins. Co.*, 1984 WL 7636 (10th Dist.

Mar. 29, 1984), and *Cascioli v. Central Mutual Ins. Co.*, 1985 WL 10130 (10th Dist. Aug. 27, 1985).

{¶71} In *Great Oaks Co.*, *Inc.*, the Tenth District Court of Appeals reversed a jury verdict in a case where an insured had sought to recover damages from its insurance agency or, alternatively, its insurer, following the agency's failure to obtain coverage upon the insured's request, which resulted in an uninsured loss to the insured following a fire. Attorneys' fees were not addressed in that case.

{¶72} In *Cascioli*, the insureds had sought to recover damages for the failure of their insurance agent to procure insurance, and the insurance agency then filed a third-party complaint against the insurance company that had denied coverage. The trial court granted summary judgment in favor of the insureds against the insurance agency, and also granted summary judgment in favor of the insurance company against the agency. On appeal, the insurance agency argued, among other claims raised, that the trial court erred in granting an award of attorneys' fees to the insureds. In overruling that assignment of error in part, the Court of Appeals held that "[t[he rule of damages, in a case where an insurance company negligently fails to obtain the coverage requested, is that damages are limited to those that are reasonably foreseeable under the circumstances", and then went on to hold that some amount of attorneys' fees was recoverable by the insureds. *Id.*, at *3-4.

{¶73} On the basis of *Great Oaks Co., Inc.* and *Cascioli*, Final Touch argues here in its second cross-assignment of error that the trial court erred in not awarding

attorneys' fees to Final Touch, against Kernan. Final Touch asserts that attorneys' fees were a reasonably foreseeable damage as a result of Kernan's negligence and therefore were recoverable.

**{¶74}** We review a trial court's decision regarding an award of attorneys' fees for an abuse of discretion. *Jasper v. White*, 2023-Ohio-2358, ¶ 44 (3d Dist.), citing *Ritzler v. Arcadia*, 2020-Ohio-4416, ¶ 21 (3d Dist.). An abuse of discretion connotes more than an error of law; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶75}** "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 2009-Ohio-306, ¶ 7. There are exceptions to the American rule, such as when a statute provides for the recovery of attorneys' fees or if an enforceable contract between the parties provides that attorneys' fees shall be paid in the event of a dispute between the parties. *Id.*, at ¶ 7-8. Additionally, attorneys' fees may be awarded as an element of compensatory damages if punitive damages are also awarded. *Spires v. Oxford Mining Co., LLC*, 2018-Ohio-2769, ¶ 46 (7th Dist.), citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35 (2000). In the instant case, however, there is no claim by Final Touch that one of the established exceptions to the American rule is applicable.

**{¶76}** Moreover, pursuant to R.C. 2721.16, attorneys' fees are generally not recoverable in a proceeding for declaratory relief. *Jasper v. White*, *supra*, at ¶ 45.

**{¶77}** R.C. 2721.16, which first became law on September 24, 1999, provides in relevant part:

> (A)(1) A court of record shall not award attorney's fees to any party on a claim or proceeding for declaratory relief under this chapter unless any of the following applies:
>
> (a) A section of the Revised Code explicitly authorizes a court of record to award attorney's fees on a claim for declaratory relief under this chapter.
>
> (b) An award of attorney's fees is authorized by section 2323.51 of the Revised Code, by the Civil Rules, or by an award of punitive or exemplary damages against the party ordered to pay attorney's fees.
>
> (c) Regardless of whether a claim for declaratory relief is granted under this chapter, a court of record awards attorney's fees to a fiduciary, beneficiary, or other interested party, the attorney's fees are to be paid out of trust property, estate property, or other property that is the subject of a fiduciary relationship and that is involved in that claim or proceeding for declaratory relief, and the attorney's fees are awarded in accordance with equitable principles that permit recovery of attorney's fees incurred for services that are beneficial to the trust or estate.

**{¶78}** We further note that the case primarily relied upon by Final Touch in this cross-assignment of error, *Cascioli v. Central Mutual Ins. Co*, *supra*, was decided in 1985, years prior to R.C. 2721.16 being enacted. Additionally, as Final Touch points out in its appellate brief, *Cascioli* is seemingly the only appellate court decision in Ohio holding that attorneys' fees are recoverable in a case such as this, on the basis that such fees are reasonably foreseeable. For those reasons, we decline

to adopt the holding in *Cascioli* and specifically find that it is not applicable to this case.

**{¶79}** In summary, given the general American rule followed in Ohio that attorneys' fees may not be recovered as a cost of litigation, and because attorneys' fees are generally not recoverable in this type of action pursuant to statute, we find that the trial court did not abuse its discretion in denying Final Touch's request for attorneys' fees.

**{¶80}** The second cross-assignment of error raised by Final Touch is overruled.

*Cross-Appeal by Kernan – Cross-Assignment of Error*

**{¶81}** In the cross-appeal filed by Kernan, the following cross-assignment of error has been raised.

**Cross-Assignment of Error**

**The Trial Court erred in granting, in part, the motion for summary judgment of Defendant Final Touch Logistics, LLC ("Final Touch").**

**{¶82}** In this cross-assignment of error, Kernan asserts that the trial court erred in granting summary judgment finding Kernan liable to Final Touch or Morton for up to $250,000.00, being the difference between the $1,000,000.00 of liability coverage intended to be in place pursuant to the insurance policy and the $750,000.000 of coverage that the trial court correctly determined is actually in place.

**{¶83}** Again, we review a decision to grant summary judgment de novo. *HCF of Findlay, Inc. v. Bishop*, 2019-Ohio-319, ¶ 6 (3d Dist.), citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, (2000). "Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party." *Id.*, citing Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶84}** "It is well-settled that in a negligence suit between private parties, the plaintiff must prove (1) the existence of a legal duty, (2) the defendant's breach of that duty, and, (3) that the breach was the proximate cause of harm and damages." *Scott v. Marckel*, 2008-Ohio-2743, ¶ 19 (3d Dist.). "The scope of any duty owed is the standard of care that an actor must exercise." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 27. "The minimum standard of care expected under any circumstances is to exercise that degree of care and caution that an ordinarily careful and prudent person would exercise under similar circumstances." *Id.* "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

**{¶85}** In its cross-appeal in the instant case, Kernan first argues that expert testimony was required to prove the duty of care owed by Kernan to Final Touch,

in order to demonstrate that Kernan breached a duty of care and thereby caused harm. We disagree.

**{¶86}** In *Hanick v. Ferrara*, 2020-Ohio-5019 (7th Dist.), a similar claim was raised with regard to the necessity of expert testimony as to the standard of care owed by an insurance agent to a client. In that case, our judicial colleagues in the Seventh District aptly summarized the applicable law as follows:

> In medical and legal malpractice cases, the Supreme Court generally requires expert testimony on the professional standards of performance. *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 461 N.E.2d 1295 (1984); *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130, 346 N.E.2d 673 (1976). Although not considered malpractice, the Court also required expert testimony as to a nurse's negligence because the claim involved the nurse's professional skill and judgment which encompassed matters outside the common knowledge and experience of jurors. *Ramage v. Central Ohio Emergency Serv. Inc.*, 64 Ohio St.3d 97, 103-104, 592 N.E.2d 828 (1992) (as opposed to ordinary negligence such as in a case where a patient fell from a hospital bed).

> Appellate courts have thus required expert testimony to show breach of the standard of care by an insurance agent in certain cases. *Associated Visual Communications v. Erie Ins. Group*, 5th Dist. Stark No. 2006 CA 00092, 2007-Ohio-708, 2007 WL 520316, ¶ 66, citing *MBE Collection, Inc. v. Westfield Cos. Inc.*, 8th Dist. Cuyahoga No. 79585, 2002 WL 598320 (Apr. 18, 2002). Yet, even in a legal malpractice case, expert testimony is not necessary where the breach of a professional duty is well within the common understanding of the laymen on the jury. *McInnis*, 10 Ohio St.3d at 113, 461 N.E.2d 1295 (where the attorney promised not to publish notice in a newspaper but then did so without consulting with the client).

> This is known as the common knowledge exception. "Under this exception, matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and

experience of mankind, need not be established by expert opinion testimony." *Ramage*, 64 Ohio St.3d at 103, 592 N.E.2d 828.

The Eleventh District held an expert was not required where an insured instructed the insurance agent to cancel a policy on a certain date and the agent failed to inform the insured the policy would be canceled immediately. The court ruled: the breach was "so apparent as to be within the comprehension of laymen"; "only common knowledge and experience" was needed to judge the issue; and the issues on the duty of care were "not of a complex nature involving industry standards or policy interpretation." *American Internatl. Recovery v. Allstate Ins. Co.*, 11th Dist. Portage No. 2009-P-0008, 2009-Ohio-6508, 2009 WL 4758823, ¶ 16-18 (distinguishing the *MBE* case).

*Id.*, at ¶¶ 90-93.

{¶87} In the instant case, Final Touch alleged that Kernan, through Bowen, neglected to notify Rivington Partners that Morton needed to be added to the insurance policy and then negligently represented to Final Touch that Morton had been added to the policy. Contrary to Kernan's claim regarding the need for expert testimony to establish Kernan's duty of care, the duty of care owed a client by an insurance agent or broker is well established by law and, on the facts here, we find that expert testimony was not necessary to prove Kernan's negligence in handling the coverage relating to Morton, as the breach of the professional duty at issue is well within the ordinary and general knowledge and experience of mankind. Put another way, the issues regarding the duty of care owed by Kernan in the instant case are not of a complex nature involving industry standards or policy

interpretation, and therefore the trial court did not err in granting summary judgment to Final Touch in the absence of expert testimony.

**{¶88}** In further support of the cross-assignment of error at issue here, Kernan also asserts that summary judgment was erroneously granted to Final Touch as disputed issues of fact exist as to Kernan's negligence and the comparative negligence of Final Touch. Again, we disagree.

**{¶89}** "An insurance sales agency has a duty to exercise good faith and reasonable diligence in obtaining insurance which its customer requests." *Nichols v. Progressive Ins. Co.*, 2002-Ohio-3058, ¶ 47 (10th Dist.), citing *First Catholic Slovak Union v. Buckeye Union Ins. Co.*, 27 Ohio App.3d 169, 170 (1986). "When an insurance sales agency, knowing that the intended insurance company has not yet agreed to accept coverage, represents to a customer that insurance has been effected, the sales agency is liable for loss that occurs to the customer before the insurance company accepts coverage. *Nichols*, *supra*, at ¶ 47, citing *Stuart v. Natl. Indemn. Co.*, 7 Ohio App.3d 63 (1982).

**{¶90}** As discussed in greater detail above, the uncontroverted evidence in this case established that Bowen, an account manager for Kernan, neglected to follow through on Sturgill's request that Morton be reviewed and added to Final Touch's insurance policy as an approved driver and, additionally, that Bowen then represented to Sturgill that Morton had been added to the policy when, in fact, he had not. As a result of receiving that confirmation from Bowen, Sturgill hired

Morton to begin driving for Final Touch. The undisputed evidence also established that, at any time when Final Touch requested that a driver be added or removed from the policy, Sturgill would notify Bowen at Kernan of the requested change, and Bowen would then notify the underwriting team for Texas Insurance, Rivington Partners, who had the final say in approving or not approving a driver. Once a driver was approved or disapproved, Bowen would then typically email or text Sturgill to let him know. Sturgill never had any contact whatsoever with Texas Insurance or its underwriters and, specifically, neither Texas Insurance nor Rivington Partners ever provided any paperwork or other documentation to Sturgill with regard to which drivers had been approved for coverage. As all communications regarding the addition of approved drivers to the policy were made directly by Bowen to Sturgill, and because that was precisely how the transaction regarding Morton was also handled, we find no merit to Kernan's contention that there is a question of fact as to any comparative negligence on the part of Sturgill or Final Touch.

{¶91} Viewing the evidence most strongly in favor of Kernan, the nonmoving party, we conclude that summary judgment on the negligence claim asserted by Final Touch was properly granted, as the record reflects no genuine issue of material fact, Final Touch is entitled to judgment as a matter of law, and reasonable minds could reach but one conclusion as to that claim.

**{¶92}** Because the trial court's decision finding Kernan liable to Final Touch or Morton for up to $250,000.00 was fully supported by the record and applicable law, Kernan's cross-assignment of error is overruled.

*Conclusion*

**{¶93}** Having found no prejudicial error in the particulars assigned and argued by appellant Texas Insurance Company, having found no prejudicial error in the particulars assigned and argued by joint cross-appellants Final Touch Logistics, LLC and Kenneth Morton, and having found no prejudicial error in the particulars assigned and argued by cross-appellant Kernan Insurance Agency, Inc., the judgment of the trial court is affirmed. The cross-appeal filed by Retail Direct, LLC is dismissed.

***Judgment affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**